IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

           Plaintiff,

   Vs.                                    No.  08-40027-02-SAC

AARON LAYTHE HARTWELL,

           Defendant.

MEMORANDUM AND ORDER

           This case comes before the court on the defendant Aaron

Hartwell's motion to suppress evidence seized pursuant to the execution of

a search warrant on his rental house at 559 E. Southlawn, Birmingham,

Michigan, on March 28, 2008.  (Dk. 61).  The defendant is one of several

charged with drug trafficking offenses following officers' discovery of more

than 200 pounds of marijuana in a plane during a refueling stop in Salina,

Kansas.  The defendant was piloting the plane on March 25, 2008, which

had flight plans for departing from an airport in the area of San Diego,

California and arriving at an airport in the area of Detroit, Michigan.

Following the discovery of the marijuana, the defendant spoke with officers.

           Based on information provided in this interview and in a brief

investigation of the defendant, the agent prepared an affidavit and obtained

a search warrant on the defendant's rental home in Michigan.  The

defendant challenges the sufficiency of the warrant affidavit to provide

probable cause to believe his rental home in Michigan would contain

evidence of drug trafficking.  In its response opposing the motion, the

government contends the agent's affidavit is more than sufficient and also

reports that the parties have agreed a hearing on this motion is

unnecessary.  (Dk. 61).  After reviewing the parties' filings and researching

the relevant law, the court files this order as its decision on the defendant's

motion.

Probable cause to issue a search warrant exists when the facts

and circumstances laid out in the supporting affidavit "would lead a prudent

person to believe a fair probability exists that contraband or evidence of a

crime will be found in a particular place."  *United States v. Basham*, 268

F.3d 1199, 1203 (10th Cir. 2001) (citing *United States v. Wicks*, 995 F.2d

964, 972-73 (10th Cir.), *cert. denied*, 510 U.S. 982 (1993)), *cert. denied*,

535 U.S. 945 (2002).  The task of an issuing judge is "to make a practical,

common-sense determination" from the totality of the circumstances

whether "there is a fair probability that contraband or evidence of a crime

will be found in a particular place."  *Illinois v. Gates*, 462 U.S. 213, 238

2

(1983).  The issuing judge is expected to draw reasonable inferences from information found in the affidavits.  *See United States v. Rowland*, 145 F.3d 1194, 1205 (10th Cir. 1998).

The existence of probable cause is a "common-sense standard."  *United States v. Wicks*, 995 F.2d at 972.  "[P]robable cause is a fluid concept-turning on the assessment of probabilities in particular factual contexts-not readily, or even usefully, reduced to a neat set of legal rules."  *Gates*, 462 U.S. at 232.  Probable cause is more than a mere suspicion, but considerably less than what is necessary to convict someone.  *United States v. Ventresca*, 380 U.S. 102 (1965).

If the judge considered only the supporting affidavit in issuing a warrant, the reviewing court likewise determines the existence of probable cause for the warrant exclusively from the supporting affidavit's four corners.  *See Whiteley v. Warden, Wyo. State Penitentiary*, 401 U.S. 560, 565 n. 8 (1971); *United States v. Hudspeth*, 525 F.3d 667, 674 (8th Cir. 2008) ("Where there is no evidentiary hearing before the magistrate judge, the probable cause determination must be based upon 'only that information which is found within the four corners of the affidavit.'"  *United States v. Olvey*, 437 F.3d 804, 807 (8th Cir. 2006)).  In determining

whether probable cause supports the search warrant, the court assesses

the sufficiency of the underlying affidavit against the totality of the

circumstances to ensure "the magistrate had a substantial basis for

concluding that probable cause existed." *United States v. Tisdale*, 248

F.3d 964, 970 (10th Cir. 2001) (internal citations and quotations omitted),

*cert. denied*, 534 U.S. 1153 (2002).  "Searches conducted pursuant to a

warrant are favored, and as such, the magistrate's determination that

probable cause exists is entitled to great deference." *United States v.*

*Gonzales*, 399 F.3d 1225, 1228 (10th Cir. 2005) (citations omitted).

**Facts in Affidavit**

On March 25, 2008, Immigration and Customs Enforcement

("ICE") agents in Wichita, Kansas, in a telephone call from the Air Marine

Operation Center ("AMOC") in Riverside, California, learned that a plane

being flown under suspicious circumstances was scheduled to land at the

municipal airport in Salina, Kansas, around 11:30 a.m. for refueling.

AMOC identified Mark Lair as the owner of the plane who had filed the

Federal Aviation Administration ("FAA") flight plans that indicated three

persons would be onboard.  In searching the Treasury Enforcement

Communications System on Mark Lair, AMOC discovered that Lair had

prior arrests for possession of narcotics, assault and battery, felony weapons, and theft.  FAA records also showed that Lair had not complied with FAA registration requirements.  Following some custom inspections, Lair obtained a new registration number on the plane but continued to operate the plane under the old number for several months.

When the plane landed at the Salina Municipal Airport, deputies with Saline County Sheriff's Office identified the pilot as the defendant Aaron Hartwell and one passenger as the defendant Joe Anthony Martino. Mark Lair was not in the plane.  The deputies asked Hartwell to produce the FAA documents for the plane and the flight.  Hartwell opened the plane's door to retrieve the documents and left the door ajar.  Deputy Hughes walked his drug detection canine around the perimeter and observed an alert near the door.  Deputy Hughes fully opened the door and smelled the strong odor of marijuana.  A search of the plane revealed three suitcases and a black duffel bag containing approximately 204 pounds of marijuana.  Hartwell and Martino were arrested and transported to the Saline County Sheriff's Office.

Hartwell agreed to waive his rights and speak with officers. Hartwell told officers of their destination and that he rents a home at 559 E.

5

Southlawn, Birmingham, Michigan, as he frequently travels there for real estate business.  Hartwell said he was the sole occupant of the property and paid monthly rent of $2,000.  Hartwell said he had known Martino for only a short time and denied all knowledge of the marijuana.

The affiant, Christopher Hudson, an ICE special agent, investigated this matter further on March 26.  From AMOC, Hudson learned that between April 3, 2007 and March 25, 2008, Hartwell had flown 24 trips from San Diego, California to Waterford, Michigan, and that Hartwell had made numerous international trips to Mexico and Canada.  From the FAA database, Hudson discovered that Hartwell's medical certificate had expired in January of 2008, and by regulation Hartwell was precluded from operating an aircraft without an effective certificate.   Also from the FAA database, Hudson determined that the plane was registered to a Nevada corporation, H7 Aviation, and Marc Lair was its president, secretary, treasurer and director.  A further inquiry on Lair revealed that he was not a FAA licensed pilot and that it is "not the normal course of business" for a person who is not a pilot to file a flight plan as Lair did with this trip.  (Dk. 61-2, p. 8).  Hudson confirmed that Hartwell rented the premises at Southlawn Boulevard in Birmingham, Michigan.  Finally, agent Hudson

6

averred that there was probable cause to believe that Lair, Hartwell and Martino were using this plan to transport controlled substances from California to Michigan for distribution.

With respect to what evidence of this drug distribution conspiracy would be found in the defendant's rental home, Hudson affirmed that a pilot typically retains a logbook, flight plans, and receipts for fuel expenses and related credit card charges. Hudson avers that persons dealing drugs will keep records in their homes or businesses that track orders, purchases, sales, debts, credits, and receipts related to their illicit drug enterprise. Because drug dealers frequently rely on others to supply and to distribute the drugs, dealers will retain the names and addresses of such persons and co-conspirators or will keep other documents, directories, telephone books or photographs that identify these involved parties. Dealers must secrete, transfer and conceal the high profits earned from drug trafficking, and their residences are likely to contain evidence of these efforts as well as large amounts of currency or transferable assets that could be readily used in these illegal transactions. Hudson also averred that the residence may contain evidence of other conspirators who occupied or controlled property therein.

**Analysis and Holding**

Agent Hudson's affidavit is more than sufficient to provide probable cause for the issuance of a search warrant on Harwell's rental home in Michigan.  The defendant argues that officers found nothing in the plane that linked the marijuana to his rental home.  The defendant calls it a "leap in logic" to believe his other flights to Michigan are drug related, because he told officers that the trips were related to his real estate business.

Neither of the defendant's arguments confronts the facts that the defendant was flying a plane from California to Michigan loaded with a distribution amount of marijuana (over 200 pounds) and that the strong odor of marijuana filled the plane.  It is reasonable for an officer "to believe there was a fair probability that additional evidence" of drug trafficking will be found in the "nearby residence" of someone involved in the distribution of drugs.  *United States v. Sparks*, 291 F.3d 683, 689-90 (10th Cir. 2002) (citing *United States v. Whitner*, 219 F.3d 289, 297-99 (3d Cir. 2000) ("citing various cases and agreeing that evidence of involvement in the drug trade is likely to be found where drug dealers reside").  The alleged sixteen miles between his rental home and the Michigan airport described

8

on the flight plans does not vitiate this probable link between his Michigan rental house and the defendant's cross-country transportation of marijuana from California to Michigan.

The affidavit sufficiently avers the probable cause to believe Harwell was involved in the distribution of this marijuana.  Besides the strong odor of marijuana in the plane, there was the suspicious circumstance of the flight plans being filed by Lair who was not a pilot, who was not on the plane, and who had been arrested previously for narcotics possession.  That the defendant can offer an innocent explanation for his 24 trips to Michigan this past year certainly does not exclude its consideration under the totality of circumstances analysis.  Even if a factor "is not by itself proof of any illegal conduct and is quite consistent with innocent travel," it may still contribute to establishing probable cause. *United States v. Sokolow*, 490 U.S. 1, 9 (1989).  Agent Hudson's affidavit provides a sufficient nexus between the drug trafficking activity and the defendant's rental home in Michigan.

Even if the search warrant were ultimately found to be unsupported by probable cause, the court would not suppress the seized evidence as the officers executing the warrant "acted with an objective

good-faith belief that the warrant was properly issued by a neutral magistrate." *United States v. Danhauer*, 229 F.3d 1002, 1006 (10th Cir. 2000); *see United States v. Leon*, 468 U.S. 897, 922-23 (1984). Considering all the circumstances and a reasonable knowledge of the controlling law, the court believes a reasonable officer would not have known the search was illegal here despite the magistrate judge's authorization. *United States v. Leon,* 468 U.S. at 923 n. 23.  The good faith exception also applies here.

IT IS THEREFORE ORDERED that the defendant Aaron Hartwell's motion to suppress (Dk. 61) is denied.

Dated this 22nd day of August, 2008, Topeka, Kansas.


s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge